Anita Johnson v. Department of Labor I only see two parties on it. Johnson and Labor. Okay. Attorney. They're definitely the attorney for the anthem, which is why I think it's good. Okay. Great. Okay. Good morning, counsel. You may proceed. Thank you. Good morning, Your Honors. I am Crystal Wright, counsel for Anita Johnson, petitioner in the matter of Anita Johnson v. Department of Labor. I do want to give a little bit of background. I understand that you've read the brief, but I'd like to just give some historical background. We're here today because my client's life was devastated after wrongful termination by WellPoint, who is now Anthem. Your Honors, Ms. Johnson, finding it her ethical and administrative duty to report fraud or potentially fraudulent activity in the workplace that could harm and negatively impact stakeholders, did make that report. In fact, she made several reports over the years. While trying to maintain the same performance she had maintained in years past, Ms. Johnson sought to prevent fraud. She sought to prevent the collapse of an institution whose collapse had the potential to cause a domino effect, ruining the lives of stakeholders and others in the industry. Instead of meeting Ms. Johnson's articulation of her concerns with open ears and an eye towards change, her superiors met the concerns with suspicion and an eye towards terminating her in violation of established law. Your Honors, after her termination, WellPoint actually put measures in place to address and potentially correct the very issues Ms. Johnson spent years explaining that she reasonably believed were illegal or fraudulent. In fact, WellPoint was fined and forced to pay a hefty fee because of the very conditions Johnson brought to their attention in the years prior. Despite that, Your Honor, WellPoint wants us all to believe that Ms. Johnson's belief that the company's practices were not illegal or fraudulent, that they want us to believe that Ms. Johnson, who was terminated right before they began rectifying the very problems she brought to their attention years ago and was terminated for, for cause, if you will, because she blew the whistle. Your Honor, Ms. Johnson was terminated solely because she reported suspected fraudulent activity to her superiors. That is the very activity Sarbanes-Oxley was enacted to protect. The question before the Court today is whether Ms. Johnson engaged in a protected activity as contemplated by the whistleblower statute. The short answer is yes. To establish a prima facie case for a Section 806 claim, an employee must allege that she engaged in a protected activity, that the respondent knew or suspected that the employee engaged in the protected activity, that the employee suffered an adverse action, and that the circumstances were sufficient to raise the inference that the protected activity was a contributing factor to the adverse action. Your Honor, Ms. Johnson did engage in a protected activity. There is no dispute that she suffered an adverse action as she was terminated. There is dispute as to whether or not there were other contributing factors. The October 30, 2015 decision and order on remand denying the complaint and the 2017 decision are contrary to established law and must be reversed. While the orders note that she met some of the requirements of the claim to file a claim, the reason for denial is based primarily on Ms. Johnson failing to establish by a preponderance of the evidence that she engaged in a protected activity. In order for her to have engaged in a protected activity under SOX, she just had to show that she had an actual personal belief that the conduct complained of constitutes reports of mail fraud, wire, radio, or television fraud, bank fraud, securities fraud, violation of any rule or regulation of the security exchange commissions, or a violation of other Federal law relating to fraud on shareholders under other Federal laws, and that a person of similar experience, training, and factual knowledge would believe that a violation had occurred, is occurring, or is about to occur. Instead of using the standard articulated in the statute, the ALJ inserted both times, inserted their own interpretations, deciding that she did not engage in a protected activity because there was no evidence of WellPoint's financial statements being manipulated to hide performance penalties paid, no evidence of stockholders being defrauded, and no evidence by WellPoint to defraud stockholders. With that rationale, they not only robbed her of her right to move forward, but actually rewrote the law and disregarded the established. As you see it, what did Johnson have to complain about? She had to say something was wrong. Exactly. She may not have to have specifically used the word I think that there is a fraud in this case, but she has to say something more than operationally the computers aren't working right or something like that, doesn't she? She does, Your Honor. In fact, she does. So what is it, in your view, that she has to say? She has to actually say that she thinks that they're not working and that it will have a trickle-down effect or a domino effect to the shareholders that would negatively impact their shares or their stakes in the company. And that's what she did. That's what she did for a year. And so that WellPoint, I think that it's evidence that they were made aware by my clients because they changed their practices after having terminated her. Didn't the ALJ have a hearing which he heard from witnesses and had to make credibility assessments, right? Absolutely. And he made credibility assessments. Are you asking us to in some way reassess credibility? I am asking you to find that them having made those assessments was an abuse of discretion. And I guess I am, Your Honor, asking you to not have the case relitigated but definitely reassess the credibility. It's because it was an absolute abuse of discretion. Given they placed an unreasonable amount of weight on the opposing side's rationale and argument, even though the evidence shows that after firing my client, after terminating her, ruining her life, they changed the very things about which she complained, and that's evident in the transcript of the hearing. Well, if it were true that what she complained about was the fact that there was an inefficient computer system which caused everything to get delayed, and they changed that at some point, does that prove that she complained about there being something not fraudulent or that would affect shareholder values? I think there is an inappropriate amount of weight given to the fact that it does not prove. I think that it lends to prove the fact that they were made aware of it by Ms. Johnson. The evidence shows that Ms. Johnson had these monthly meetings with Ms. Wade for years prior to them actually doing something. And then they came and did an investigation. But as Ms. Johnson began to push further on the issue, them wanting to pull back and isolate her so that she wouldn't, I guess, be able to bring this claim, they terminated her, and then so fixed everything up so that it wouldn't go any further. But what happened after her termination, I guess, is immaterial when you consider that she was terminated for having blown the whistle, something that Sovereigns Oxley is designed to protect. And their main issue, the question is that she didn't have, or their position is she didn't have a reasonable belief, subjectively or objectively, that her, that what she was alleging having occurred was actually fraudulent. And she, Your Honors, she absolutely had a reasonable belief. And it's evidenced by the fact that they changed everything after having terminated her. So if they are similarly situated people with the same, in the same position, with the same level of knowledge, changing the very things that she complained about, that makes her believe, that goes to prove that her belief was actually very reasonable. And that's the, the lack of reasonable belief is why they closed out the complaint. Taking the standards, the subjective standard in turn, in Gale v. United States Department of Labor in regards to subjective reasonableness, the court held that there must have an actual belief in the company's, that the company's conduct was illegal or fraudulent. As I stated, Your Honors, she had that actual belief. The company actually changed their behavior after having terminated her. And that supports the fact that her belief was reasonable. There was no requirement that they have to move with, that an employee have to move with certainty in regards to her belief, just that there is an actual one. She felt so strongly about the company's failure to abide by the terms of its contract and potentially defrauding its shareholders as she committed herself to monthly reporting to supervisors. In regards to the subjective standard, she met her burden. As noted in Allen v. Administrative Review Board, the objective reasonableness standard is a belief, excuse me, a belief is evaluated based on the knowledge available to the reasonable person in the same factual circumstances with the same training and the same experience. That the complaint was denied with the definition of objective, with that definition of objective belief is laughable. After she voiced her concerns, they created a task force to look into the problem. They even changed the processing system entirely. So it goes without saying, but I will go ahead and say it, those people are likely deemed to be reasonable, and they have the same training and experiences as Ms. Johnson. That they reacted to her claims and concerns of fraud by terminating her and later remedying the situation is proof that they believed, as she believed, that continuing in the manner in which they were at the time Ms. Johnson discovered the potential fraud could possibly subject them to greater scrutiny and liability. So, Your Honor, what we're asking, what Ms. Johnson is asking this Court to do is to find that she absolutely engaged in protected activity by every definition, and for that reason alone she was terminated. So forcing her complaint out and denying her right to a full review and adjudication on the merits is a violation of the very law designed to protect her. She is entitled to present her complaint and have its full consideration and praise if the agency's decision is reversed and remanded. Thanks very much. Thank you. Good morning, Ms. Johnson. Good morning, Your Honors. My name is Heather Johnson for the U.S. Department of Labor. SOX prohibits an employer from retaliating against an employee for reporting to her supervisors conduct she reasonably believes constitutes a violation of Federal mail, wire, bank, and securities fraud statutes, any SEC rule or regulation, or provision of Federal law relating to fraud against shareholders. Does she have to mention the word fraud? No, Your Honor, she does not. So what does she have to do to comply with Sarbanes-Oxley? How much does she have to say? She need not use any particular words, give a citation to the underlying violation or to the elements, but she does need to provide a sense of the specific conduct she believes is violative of one of the SOX enumerated laws, and she needs to connect it to SOX. So it needs to be clear to an employer or her supervisor or manager that she is complaining of illegality or fraud. So in determining that Ms. Johnson failed to demonstrate that she actually believed WellPoint's conduct violated any of the SOX enumerated laws or that such a belief would have been objectively reasonable, the ALJ in his discretion credited the consistent testimony of Johnson's supervisor, Jennifer Wade, over that of Johnson herself. The ARB appropriately affirmed finding that the ALJ's decision was supported by substantial evidence. Likewise, this Court should not disturb the ALJ's credibility determinations or the findings based on these determinations, but should affirm based on the substantial evidence in the record. So as I've mentioned, the outcome of this case really is determined by the ALJ's credibility determination. The ALJ credited Wade over Johnson in finding that Johnson lacked a subjective belief that WellPoint was violating any of the laws covered by SOX. The ALJ reviewed the testimony from the hearing as well as various affidavits and depositions that had been filed in the case and records and found that Ms. Wade consistently testified. Help me with the finding that the ALJ made and the more limited opinion from the ARB. Clarify for me, did they find that the essential failure of Johnson's claim was that she did not subjectively believe X, Y, and Z or that it was not objectively reasonable to believe X, Y, and Z or both? Because when I read it and I reread it, it wasn't crystal clear to me whether they were saying A or B or both. There's no question the ALJ said, I don't buy what she's having to say. I disbelieve and discredit Johnson. I credit the supervisor and here's why. But I wasn't quite clear whether it was because she didn't subjectively believe there was a violation of SOX or because there could be no objectively reasonable belief there was a violation of SOX. Can you help me? How should I read what the ALJ and the ARB said here? I believe, Your Honor, they found that both Ms. Johnson failed to demonstrate that she had a subjective belief that the conduct she complained of violated a SOX provision as well as any belief she may have had would not have been objectively reasonable. Where can I find that in the ARB's ruling? The ARB's ruling admittedly does combine the two and it discusses them together as part of the protected activity analysis. However. Right, but your point is she's got to prove both. And if she flunks out on either subjective or objective, she loses. Right. And I'm just trying to figure out whether they said she missed on the one or she missed on the other or she missed on both. On page four of the ARB decision, the court explains, excuse me, the ARB explains that it largely adopts the reasoning of the ALJ, but it only puts forth the most critical arguments in support. So I believe, Your Honor, it's fair to assume that the ARB adopted both grounds on which the ALJ. So you think it's clear the ALJ went off on both. Yes. And the ARB can only be read as having affirmed the finding by the ALJ. That is how I read it, Your Honor. Although I take it your view is it hardly matters. She can't win on either. That is exactly right. And if you like, I can go through some of the evidence that the ALJ and the ARB found compelling. Okay. And specifically, Johnson can, excuse me, Ms. Wade consistently testified that she understood Ms. Johnson's complaints to be concerns that were operational in nature and related to policy and procedure, and that nothing Johnson said ever gave her the sense that this was something more than that, that it approached any type of fraud or illegality. That, Your Honors, is enough to meet the substantial evidence standard, which is very deferential to the ALJ's credibility findings and factual findings. In addition, Wade consistently testified that Johnson never mentioned securities fraud, shareholder fraud, violations of SOX, or breach of WellPoint state contracts. It is true that a lot of the testimony in this case that was elicited uses the word fraud and speaks of securities fraud or shareholder fraud, but that is largely because by the time Ms. Johnson's claim was before the ALJ at the hearing, that was the essence of her claims, and many of the questions focused on those. It's not an indication that the ALJ or the ARB felt that the word fraud was necessary or that she had to specify a particular citation or anything of that nature. But what she did need to do and what the ALJ and the ARB found that she did not do is to connect the conduct complained of to a provision of SOX. Thank you, Your Honors. Because substantial evidence supports the ALJ's holding affirmed by the ARB that Johnson failed to demonstrate that she reported conduct she reasonably believed violated one of the provisions of laws covered by SOX, this Court should affirm the ARB's decision denying her complaint. Thank you, Your Honors. Thanks very much. Good morning, Your Honors. Christopher Robertson for Anthem. And obviously WellPoint became Anthem, so it's littered between them, but they are one and the same for purposes of this appeal. One issue that has not been addressed, and I'll just ask the panel, is we had the procedural question that was issued by this Court with regard to whether this appeal was timely. It's been briefed pretty fully both as part of the special question. Your position is we're without jurisdiction. Correct. And I just wondered if the panel had any questions on that or you want me to address what you addressed with the others. No, I think you can go right to the merits. Okay. I will make one quick point on that, though, is we do think we heard the earlier argument about statutory construction. We think the statutes are clear. Final is final, and there's no real citations from the Department of Labor with regard to the reconsideration issue. So they brief it, they say it, but there's no regulation or statute. Do you know any statute or case or anything that says that there's no right for them to entertain a motion to reconsider? Actually, our position is a little different than that. It's not if there may be the right to entertain a motion for reconsideration. The point is it doesn't render the decision by the ARB any less final for purposes of the 60 days. So you would have a motion for reconsideration pending but not told? Correct. At the same time that they filed a motion for reconsideration, they'd have to file an appeal? Absolutely. Within that 60 days, they file that appeal. If they file a motion for reconsideration, fine. Maybe they can come to this Court and ask to toll it. But statutorily, if they have not filed it within the 60 days of a final order, that's what the statute says. That's our position. Do you have anything to support that other than your interpretation of the statute? Well, I think, you know, the most recent case, obviously, is Digital Realty, which was the Supreme Court case. And it's really the first case that really interpreted SOX from a statutory standpoint. And it was strictly construed. One of the main issues we have is that if you know, and this is all briefed, in the ALJ context, there is provision for reconsideration. In the ARB context, there is not. And so, you know, drafters know what they can draft. But it doesn't say there should be no motion for reconsideration either. I mean, we would argue that a motion for reconsideration should not be allowed in the ALJ. I know, but it doesn't say that. Maybe I'm not understanding the question. I'm saying there's no rule that says you cannot file a motion for reconsideration. But under other statutes and regulations, it specifically says there is. Of course, we have held in many other contexts that, as a general matter, agencies have the inherent power to reconsider. And that may be true. But my issue is it doesn't make the decision of the ARB any less final. So I can move on to the merits. I would. I think that would be a good idea. I think you asked a very specific question about subjective and objective reasonableness. To begin, we're on a standard of review with this Court of a full hearing on the merits with witnesses at the ALJ that was then reviewed by the ARB. And the ARB, even on reconsideration, denied reconsideration. The ALJ did determine both that there was a lack of subjective and objective reasonableness in terms of the protected activity. And factually, each one has a different component to it. The ALJ determined, based on facts, based on testimony, which is subject to an arbitrary and capricious review, that Ms. Johnson, who herself was targeted, who herself had a whistleblower come up against her, had both retaliated against that whistleblower and, in addition, had essentially changed her story multiple times about what it was she was complaining about. Initially saying, well, I would never do those things that I later complained were in violation because they wouldn't be in violation. This is the essence of testimony at trial that is credibility determinations made by an ALJ, that the ARB looked at and affirmed, and that this Court should look at and affirm. So its subjective reasonableness is on the facts, on the credibility of the witness. Do I believe them when they say I subjectively came forward and thought I was complaining about something that would be a violation of one of these components of SOX? And the ALJ answered that question clearly, no, I don't believe you. And that's subjective. On the other hand, objective reasonableness goes to, is the even if we credit her testimony, is what she's complaining about rise to the level that it would be a violation of a fraud statute? And there was testimony, again, at the hearing that not just the word fraud, that's really not the point. The point is that what was being complained about was some issues with an internal system that was a tiny percentage of the claims process. And that's all in the briefing. It's in the record. It was a couple hundred thousand out of millions of claims saying, well, this could be — so that's the objective standard, is even if I credit what you're talking about with this internal issue, it doesn't rise to the level of creating an issue of mail fraud or wire fraud or securities fraud, particularly at a company at that point like WellPoint, relative to its financial statements, relative to its day-to-day operations. How do you read what the ARB did? Did they say, we agree that there was substantial evidence supporting the ALJ's findings on subjective belief? Did they say, we agree with the ALJ insofar as it determined it objectively? Or did they say both? I can't quite tell because it looks to me like they kind of ran it together in their analysis. Just help me understand what you believe the ARB was doing here. It's absolutely both. Both particularly because, you know, we obviously argued that in our briefing. No question you argued it both ways. I meant even below we argued it in our briefing. No question about that. But if you look at page 4 and 5 of the decision, it says, infirming the ALJ's determination that Johnson failed to prove that she engaged in SOX-protected activity, the board focuses on Johnson's failure to establish that her belief that WellPoint's activity of which she complained violated SOX was both subjectively and objectively reasonable. That's in the decision on page 4. And then if you flip to the next page, on page 5 of their decision, they specifically say, Johnson's burden to prove her concerns credibly involved a reasonable belief of SOX. And then it goes on, and that's where factually then they're talking about both. So they're saying, we understand it's both. And here factually we have both because, A, the ALJ didn't believe her when she says I said X and Wade said you never said X. And, B, even if those issues were the issues, they would not rise objectively to the level of a SOX violation. I see I'm out of time. If there's any other questions? Anything else? No. Thanks very much. Thank you, Your Honor. And, Ms. Wright, you have reserved five minutes. Come right up. Thanks. Okay. So just briefly, I find it odd that the Department is now saying that Ms. Johnson had to reference SOX in her conversations with her superiors. If that were the requirement, then many lay whistleblowers who have no knowledge and would never even begin to be able to understand where knowledge of complex legal standards is found would ever be able to file a Sarbanes-Oxley complaint. The very people the law is set to protect would, for lack of knowledge, be without protection if the standard were such that a full fraud claim, including evidence or reference to terms in the statute, had to be presented before a whistle could blow. There would be no whistleblowing. There would be no protection, and those more savvy, more inclined to defraud shareholders would be incentivized for that lack of protection. Your Honor, it's the Department's position that the words fraud do not have to be mentioned to sustain an action, but their argument is largely based on Ms. Wade's testimony that Ms. Johnson never used the words fraud. You can't have it both ways, Your Honors. Either she has to mention fraud and has to go back to the statute, or she doesn't. In regards to her, the objective standard, Ms. Johnson met her burden. As stated before, the objective reasonable standard is a belief, is a standard evaluated based on the knowledge available to a reasonable person in this case. I take it you agree that for you to prevail here in this court, we would have to find that there was clear error in the fact-finding by the ALJ. Absolutely. You would have to reject it, and if there is substantial evidence that supports it, we couldn't begin to do that, could we? You agree with that as a general matter? I do agree, Your Honor. Okay. So tell me specifically, one, two, three, four, how do we go about rejecting these findings and saying not only could a reasonable person disagree about it, but that finding was so wrong that there was no way we can let that stand? Well, looking at their behavior even after the termination, I'm sorry, looking at their behavior even after her termination, it was objectively reasonable that she believed that the company was defrauding their shareholders, even if she did not use those terms, because the company actually was. They paid a fine for so doing. They changed their entire processes after they terminated her. So it was objectively reasonable that she believed that something that was happening, they later found, was actually happening. Subjective reasonableness, in her position, Your Honor, I'm sorry, she just has to have an actual belief that the company's conduct is illegal or fraudulent. That's the very nature of it being subjective. So placing the weight on Ms. Wade's testimony rather than on Ms. Johnson's testimony is a complete abuse of discretion, and it has completely turned this entire case. It's what Ms. Johnson believed, not what even she was able to articulate to Ms. Wade, even though she did in a year's worth of meetings articulate that she believed that the processing of the correspondence and the entire D-950 system was causing, could potentially be in violation of the contracts. She definitely voiced that, but it doesn't matter how Ms. Wade received it. It matters how Ms. Johnson viewed it, and that's where the ALJ missed the mark. They placed it on what Ms. Wade believed in the reporting of Ms. Johnson, not on what Ms. Johnson actually believed. So subjectively, and it's such a moving target because it is subjective, but subjectively she met her mark, and she's able to say that just based on what she believed. Objectively, she met the mark because they were fined for actually having committed fraud. They later changed everything after actually having committed fraud so a reasonable person could find that she objectively believed that fraud was happening and so reporting to Ms. Wade. So we're asking that, again, that you do reverse and remand this case. Thank you very much. Thank you. This court will be in recess until 9 a.m. tomorrow morning. All rise.